IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division



MARSHA JAMESON, )
)
)
       Plaintiff, )
)
v. )          Civil Action No.# 01:09-cv-583
)
UNITED STATES POST OFFICE, )
OFFICE OF INSPECTOR )
GENERAL, et al. )
)
       Defendants. )
)

## MEMORANDUM OPINION

This matter comes before the Court on Defendants' Motion for Summary Judgment.  In Plaintiff's Complaint, she alleges that she was discriminated against by Defendant Office of Inspector General based on her physical disability which limits her physical mobility.  This Court has federal question jurisdiction based on the Plaintiff's allegation that Defendants have violated the Rehabilitation Act of 1973.  28 U.S.C. § 1331.

Plaintiff began working for Defendant United States Postal Service Office of Inspector General ("OIG") on August 24, 2002. She was hired as a Hotline Technician under the United States Postal Service ("USPS") Handicapped Program.  Plaintiff was employed with Defendant in various administrative positions providing a variety of support services to various sections of the OIG until her removal for poor performance in April of 2007.

On June 28, 2005, two years before she was removed, Plaintiff requested a reasonable accommodation to address her concerns about her ability to follow emergency evacuation procedures in the event of a building emergency. Plaintiff initially requested to be relocated to a work station on the first floor of the OIG's office building. The OIG was unable to grant that request. However, on August 19, 2005, Defendant revised its evacuation procedures to provide for Plaintiff's evacuation in the event of an emergency.

In late 2005, the OIG underwent a reorganization and twelve (12) employees, including Plaintiff, were permanently reassigned to other groups. From January 7, 2006 until March 4, 2006, Plaintiff was assigned to assist in the OIG's Investigation Division. In February 2006, Plaintiff requested that her workspace be relocated to a space as close to the ladies' room as possible, due to her limited mobility. The OIG granted her request. The OIG made the accommodation in order to reduce the amount of walking that Ms. Jameson had to engage in throughout the workday.

Around March 6, 2006, the Plaintiff was reassigned to the OIG's Investments Division; the division that handles all financial aspects of the OIG's operations. On July 8, 2006, Plaintiff's position was redefined from an administrative position to a Contract Procurement Technician. Her duties

-2-

included support work in areas of contracting and procurement; making open market purchases; and placing delivery orders against existing contracts for supplies, equipment, services, and construction with strict expenditure limitations. This was a sedentary position in which Plaintiff was responsible for coordinating and processing low dollar amount supply requisitions with USPS issued credit cards.

In her new position, Plaintiff reported to Cheryl Buchanan, the Manager of the Contracts/Purchasing Unit. Her second line supervisor was Francine Hines, the Director of Quality and Strategy for the Assistant Inspector General for Mission Support. As a Contract Procurement Technician, Plaintiff complained about having to walk 30 feet down the hallway to pick up faxes as part of her duties. Defendant OIG responded to her complaints by supplying Plaintiff with both a desktop fax machine which allowed her to send and receive faxes from her desk, as well as training on how to receive faxes at her desk on her computer. As a result, it was not necessary for her to leave her desk in order to receive faxes. Defendant OIG gave Plaintiff this accomodation to reduce the amount of walking that she would have to engage in throughout the workday. Plaintiff did not request any other reasonable accommodations for her physical disability, which limits her physical mobility.

In September 2006, Plaintiff's direct supervisor, Cheryl

-3-

Buchanan, notified Plaintiff that her performance fell below acceptable levels on the job related performance elements of Collaboration, Communication, and Professional Competence. Accordingly, Plaintiff did not receive a salary increase for that review period.

Ms. Buchanan's evaluation of Plaintiff went into specifics on Plaintiff's weaker areas of review. For "Collaboration", Ms. Buchanan stated, "While [Plaintiff] behaves in a professional manner toward her OIG customers she does not always do so with her co-workers. She . . . is often difficult to manage." Next, for "Communication," Ms. Buchanan wrote that Plaintiff needed to improve communication with her manager and team members. Ms. Buchanan also noted that Plaintiff needed to better respond to her manager's emails as well as customer inquiries without being repeatedly prodded to do so. Then with respect to "Professional Competence", Ms. Buchanan wrote that Plaintiff often required extra guidance and direction to complete her assignments. She also stated that Plaintiff did not handle customer service requests adequately and that she processed only a small fraction of the requests that other team members handled.

As a result of that review, Ms. Buchanan placed Plaintiff on a Performance Improvement Plan ("PIP") beginning on September 28, 2006. The PIP provided official notice to Plaintiff that her current performance at her new position was unsatisfactory.

-4-

Plaintiff was then provided with an opportunity to improve her performance.  The notice outlined the required activities and level of performance that Plaintiff was required to attain in the ninety (90) days following the issuance of the notice.  Plaintiff was specifically directed to improve in the required job elements of "Collaboration" and "Professional Competence/Integrity."

In the official notice given to Plaintiff, Ms. Buchanan detailed specific examples of her past inadequacies in the problem areas of her review.  For "Collaboration," Ms. Buchanan cited multiple reports of Plaintiff's rudeness to co-workers and customers; her failure to respond to supervisory emails and her failure to timely respond to customer purchase requests.  Under "Professional Competence/Integrity," Ms. Buchanan cited Plaintiff's lack of responsibility for completing her work, the inadequacy of her work product despite repeated training, and her failure to take an interest in learning the policies and procedures associated with processing purchasing requests.

Also in the notice of the PIP, Ms. Buchanan advised Plaintiff that if she failed to improve to a satisfactory level of performance, she could be reassigned, demoted, or removed from her position.

It should be noted that the areas of Plaintiff's deficient performance identified in the PIP were unrelated to her physical disability.  As Ms. Buchanan explained, "[b]ecause Ms. Jameson's

-5-

duties are sedentary, her work restrictions do not affect the performance of her duties." Plaintiff was not required to maintain any level of physical activity in order to satisfactorily perform her duties. According to Ms. Buchanan, Plaintiff's physical impairment was not a factor in her decision to place Plaintiff on a Performance Improvement Plan.

On October 12, 2006, less than a month after her unsatisfactory review, Plaintiff received a Counseling Memorandum which addressed her failure to follow her supervisor's instructions as well as USPS OIG guideline regarding her use of leave. The Memorandum documented the Plaintiff's failure to report for duty on September 26, 2006 without prior authorization. The Memorandum also noted that a day after her unexcused absence, Plaintiff submitted a request for sick leave for September 26, 2006 even though she was not sick and admitted that she did not come to work because of her inability to arrange transportation. Because Plaintiff had no available sick leave to take, Ms. Buchanan charged her absence to Leave Without Pay for September 26, 2006.

From October through December of 2006, Ms. Buchanan closely monitored the Plaintiff's performance and met with Plaintiff regularly to offer feedback and coaching. At the end of the ninety day Performance Improvement Period, despite the efforts of Ms. Buchanan, Plaintiff had failed to achieve the goals laid out

-6-

by the PIP notice.  Her performance remained unsatisfactory.

On February 9, 2007, Ms. Buchanan proposed Plaintiff's removal from her position, due to her failure to meet the performance requirements of a Contract and Procurement Technician.  In that proposed removal, Ms. Buchanan detailed the Plaintiff's failure to perform adequately in two critical performance elements: "Collaboration" and "Professional Competence/Integrity."  To support her evaluation, Ms. Buchanan cited continuing problems similar to what prompted Plaintiff's unfavorable review.  Namely, that Plaintiff had shown that she was difficult to work with and difficult to manage.  Ms. Buchanan also noted that Plaintiff was not carrying out her job in a professional and competent manner.

None of the incidents cited in Ms. Buchanan's proposal for the removal of Plaintiff were related to Plaintiff's physical immobility.  In fact, in her Equal Employment Opportunity ("EEO") Declaration, Ms. Buchanan stated that, "[Plaintiff's] physical impairment was not a factor that was considered in the decision to issue the Notice of Proposed Removal."

Ms. Buchanan told Plaintiff that she had lost confidence in Plaintiff's ability to perform her duties.  Further, Ms. Buchanan told Plaintiff that she also had no faith in Plaintiff's ability to ever perform quality work independently on a sustained basis. Then, after a review of the factual record and the seriousness

-7-

and nature of her poor performance, Ms. Buchanan notified Plaintiff that she saw no alternative but to propose Plaintiff's removal.

Plaintiff was provided with notice of her right to reply to the notice of proposed removal, pursuant to the Inspector General Manual.[1] Plaintiff never responded to the proposed notice, despite being specifically advised of her right to respond, in person and in writing, to all of the evidence on which the proposal was based.

On April 20, 2007, Francine Hines, the Director of Purchasing, Accounting & Quality - Plaintiff's second line supervisor - notified Plaintiff that after a careful review of the facts presented, she found that the notice of removal was "fully supported by the evidence and that removal is a reasonable and appropriate sanction." In her notice of removal, Director Hines explained how she reached her independent conclusion that the evidence presented to her was sufficient to support the allegations concerning the Plaintiff's unacceptable performance. She also stated that the proposed sanction of removal was reasonable and appropriate under the totality of the circumstances. Director Hines cited examples of Plaintiff's behavior and performance that she found unacceptable to support her recommendation.

---

[1] Then Chapter 650.

In considering the appropriate sanction, Director Hines also described in a Notice of Removal how she took into consideration the factors set forth in <u>Douglas v. Veterans Administration</u>, 5 M.S.P.R. (1981) regarding dismissals of federal government employees.  Some of these considerations include: the quality of Plaintiff's work, the fact that Plaintiff was unsuccessful in demonstrating a satisfactory level of performance during the ninety day PIP, the negative impact Plaintiff's performance had on other employees who worked with Plaintiff, Plaintiff's inability to improve an essential area of her performance - collaboration.  Director Hines also considered factors that weighed in Plaintiff's favor; namely, her past performance evaluations that were satisfactory and that reassignment might be an appropriate sanction under the conditions.  Ultimately, however, Director Hines found that reassignment was not appropriate because, as she stated, ". . . I find that there are no positions within OIG where your performance deficiencies would not adversely impact operations."  Director Hines concluded her notice by finding that removal of Plaintiff was reasonable and appropriate.  Plaintiff's removal was effective April 20, 2007.

Plaintiff's decision not to contest the proposed removal or attempt to rebut the charges in any way, coupled with Plaintiff's failure to complete her work assignments over the three months leading up to her dismissal led Director Hines to conclude that

-9-

Plaintiff was no longer interested in keeping her position.  With regard to Plaintiff's physical disability, Director Hines was unfamiliar with the actual medical condition or physical impairment that caused Plaintiff's limited mobility.  The Director only knew that Plaintiff walked with a cane.  There is no evidence that Plaintiff's disability played a role in Director Hines' decision to remove Plaintiff from the Contract Procurement position.

In the Notice of Removal from Director Hines, dated April 20, 2007, Plaintiff was given notice of her right to appeal the removal decision to Deputy Assistant Inspector General Mary Demory pursuant to the rights afforded her in the Inspector General Manual, including Plaintiff's right to a de novo hearing before an independent hearing officer.  Plaintiff did not avail herself of this right.

Later, Plaintiff filed an appeal of her removal with the Merit Systems Protection Board.  On November 13, 2008, the Merit Systems Protection Board dismissed Plaintiff's appeal for lack of jurisdiction.

During her Performance Improvement Plan period, Plaintiff contacted an EEO counselor to complain that she was the victim of disability discrimination.  On December 18, 2006, Plaintiff filed a formal complaint of discrimination.  Her complaint alleged discrimination on the basis of physical disability and exposure

to a hostile work environment.  During the course of her EEO administrative proceedings, Plaintiff repeatedly admitted that she was unable to perform some of the essential duties of the Contract Procurement position.  She argued that because she lacked certain skills and abilities, she should be held to a different performance standard.  Plaintiff stated that she did not apply for positions that involved math and that she did not have a background that suited the Contract Procurement position.

On June 4, 2008, Equal Employment Opportunity Commission ("EEOC") Administrative Judge Gerald Goldstein issued a final decision which granted summary judgment for the Agency and dismissed the case.  On September 16, 2008, the Office of Federal Operations of the EEOC affirmed that decision.  Plaintiff then filed this suit on December 19, 2008 in the U.S. District Court for the District of Columbia.  The suit was later transferred on venue grounds to the Eastern District of Virginia.

While a plaintiff in an employment discrimination case is entitled to a de novo review in the district court, she is not entitled to a full trial on the merits if summary judgment is appropriate.  Evans Technologies Applications & Service Co., 80 F.3d 954, 958 (4th Cir. 1996); Ballinger v. North Carolina Agric. Extension Serv., 815 F.2d 1001 (4th Cir. 1987).  Summary judgment may be granted based upon facts developed during the administrative proceedings, the pleadings, and supplemental

-11-

affidavits.  See Chandler v. Roudebush, 425 U.S. 840, 863 n.39
(1976) (observing that the prior administrative record is
admissible in de novo federal-sector employment discrimination
cases and that the trial court may consider such materials in
pre-trial motions).

When a plaintiff presents no evidence to support an
essential element of her case, her case is subject to summary
judgment.  Unsupported speculation is not enough to defeat a
summary judgment motion; the existence of specific material
evidentiary facts must be shown.  Ash v. United Parcel Service,
Inc., 800 F.2d 409, 411-12 (4th Cir. 1986).  The Supreme Court
has further instructed that the "summary judgment procedure is
properly regarded, not as a disfavored procedural shortcut, but
rather as an integral part of the Federal Rules as a whole, which
are designed 'to secure the just, speedy and inexpensive
determination of every action.'" Celotex Corporation v. Catrett,
477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

Summary judgment will be granted for the Defendants because
Plaintiff cannot establish a prima facie case of disability
discrimination.  Further, even if Plaintiff could establish a
prima facie case of disability discrimination with respect to her
removal, she cannot overcome Defendant's legitimate, non-
discriminatory reasons for its decision to remove her from its
employment.

-12-

In making determinations concerning recovery under the Rehabilitation Act of 1973, this Court looks to cases decided under the Americans with Disabilities Act ("ADA") because "as the Fourth Circuit . . . has explained, 'the ADA and Rehabilitation Act generally are construed to impose the same requirements due to the similarity of the language of the two acts.'" Newby v. Whitman, 340 F. Supp. 2d 637, 652 (M.D.N.C. 2004)(quoting Baird v. Rose, 192 F.3d 462, 468 (4th Cir. 1999).

To recover under the Rehabilitation Act of 1973, Plaintiff must first prove a prima facie case of disability discrimination by a preponderance of the evidence. Ennis v. Nat'l Assoc. of Bus. and Educ. Radio, Inc., 53 F.3d 55, 58 (4th Cir. 2008).

> If the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, non-discriminatory explanation which, if believe by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action. If the defendant meets this burden of production, the presumption created by the prima facie case "drops out of the picture," and the plaintiff bears the ultimate burden of proving that she has been the victim of intentional discrimination.

Ennis, 53 F.3d at 58 (holding that a prima facie case plus disbelief of the employer's asserted justification for employment action is not necessarily sufficient to establish a violation; summary judgment is appropriate unless the plaintiff presents adequate evidence that the employer unlawfully discriminated).

As the Fourth Circuit explained, "In general terms, a plaintiff establishes a prima facie case by proving a set of

-13-

facts which would enable the fact-finder to conclude, in the absence of any further explanation, that it is more likely than not that the adverse employment action was the product of discrimination." Id. Accordingly, in a typical discharge case brought under the Rehabilitation Act:

> [A] plaintiff must prove by a preponderance of the evidence that (1) she was in the protected class; (2) she was discharged; (3) at the time of the discharge, she was performing her job at a level that met her employer's legitimate expectations; (4) her discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination.

Id. The Rehabilitation Act and its implementing regulations also require that in order to be covered under the statute, Plaintiff must establish that she was a "qualified individual with a disability." Hooven-Lewis v. Caldera, 249 F.3d 259, 268 (4th Cir. 2001). See C.F.R. § 1614.203(a)(6) (defining "qualified invidual with handicap" as an individual with handicaps who, with or without reasonable accomodation, can perform the essential functions of the position in question without endangering the health and safety of the individual or others.) Whether or not Plaintiff meets the statutory requirement of a "qualified individual with a disability" under the statute is a question of law. Hooven-Lewis, 249 F.3d at 268.

Here, it is undisputed that Plaintiff met the definition of "disabled." The dispositive question is whether Plaintiff is a "qualified individual" under the Rehabilitation Act. The

-14-

evidence clearly shows that Plaintiff was not a "qualified individual" under the Act because she was not able to perform the essential functions of the position, with or without a reasonable accommodation.   See <u>Tyndall v. Nat'l Educ. Centers, Inc. of California</u>, 31 F.3d 209 (4th Cir. 1994) (where a disabled employee alleged disability discrimination with respect to her discharge, summary judgment for the employer was affirmed where the employee could not establish that she was able to perform the essential functions of her position with or without a reasonable accommodation); <u>Martinson v. Kinney Shoe Corp.</u>, 104 F.3d 683 (4th Cir. 1997) (where the plaintiff's epilepsy rendered him unable to perform some essential functions of the his job as store security such that he was not a qualified individual with a disability and failed to stated a claim of disability discrimination).

Moreover, Plaintiff cannot establish a <u>prima</u> <u>facie</u> case of disability discrimination because she was not performing her duties at a level that met her employer's legitimate expectations; performance that was not related to Plaintiff's disability.   Based on the evidence submitted by the Defendants, it is clear that Plaintiff was not meeting the expectations of her supervisors at the time of her discharge in April 2007.

In fact, Plaintiff does not allege that her performance as a Contract Procurement Analyst was adequate.   She instead argues that she should never have been transferred to her Contract

-15-

Procurement position because it was not a good fit for her skills and abilities.  Plaintiff further argues that because the position was not a good fit for her skills, she should not have been held to the same performance standards as other employees who performed those duties.  It is Plaintiff's burden, however, to show that she could perform the essential functions of her job with or without a reasonable accommodation.  Tyndall, F.3d at 213. She has not met this burden.  Plaintiff's real complaint appears to be that she either needed to choose the type of work to which she would be assigned - a job that did not involve math - or that she needed to be transferred to the position of her choice. Neither of these options is required by the Rehabilitation Act.

Because Plaintiff cannot establish that she was a qualified individual with a disability, any claim that the USPS OIG failed to reasonably accommodate her disability must also fail as a matter of law.  See Newby v. Whitman, 340 F. Supp. 2d 637, 656 (M.D.N.C. 2004).  However, Defendants note that the OIG did accommodate Plaintiff throughout her tenure.  In the Contract Procurement position, Defendant OIG accommodated Plaintiff's request for a fax line at her desk in response to her request to reduce the amount of walking she would need to do as part of her otherwise sedentary duties.  Prior to that, Defendant OIG also accommodated Plaintiff's request to be closer to a restroom, another effort by OIG to reduce the amount of walking she would

-16-

need to do. The record also demonstrates that the agency provided accommodations to Plaintiff prior to the reassignment by revising its emergency evacuation plan.

Viewing the evidence in the light most favorable to Plaintiff, Plaintiff cannot establish that she was a qualified individual with a disability because it is clear that she could not perform the essential functions of her position. Thus, she has failed to establish, as a matter of law, that she was a victim of disability discrimination within the meaning of the Rehabilitation Act.

Even if Plaintiff were able to prove the existence of a prima facie case of disability discrimination, she is unable to overcome Defendants' legitimate, non-discriminatory reasons for its actions. It is clear from the foregoing discussion that Plaintiff's work performance was not meeting the expectations of her supervisors at the time of her discharge. Defendant OIG provided detailed notice to Plaintiff of her performance deficiencies in September 2006 and place Plaintiff on a ninety day PIP. Despite regular monitoring and the provision of feedback during that ninety day period, Plaintiff's performance did not improve. In response, Plaintiff argues that she should not have been placed in that position in the first place, or should not be held to the same performance standards as others due to her limited math skills. These arguments only strengthen

-17-

the Defendants' stated reasons for its decision to remove her
from employment; her admitted inability to adequately perform the
duties of her assigned position.  None of the Plaintiff's
allegations of disparate treatment rise to the level of an
actionable claim under the Rehabilitation Act.  See Page v.
Bolger, 645 F.2d 227, 233 (4th Cir. 1981) (claims of disparate
treatment must rise to the level of "ultimate employment
decisions").

     Plaintiff also fails to state a claim of hostile work
environment due to her disability.  In order to establish a claim
of a hostile work environment in the workplace, the Plaintiff
must allege the following: "(1) that she was harassed because of
her [protected status]; (2) that the harassment was unwelcome;
(3) that the harassment was sufficiently severe or pervasive to
create an abusive work environment; and (4) that some basis
exists for imputing liability to the employer."  Burlington
Indus., Inc. v. Ellerth, 524 U.S. 742, 752 (1998); Oncale v.
Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998).  The
Fourth Circuit has made clear, "Title VII does not guarantee a
happy workplace, only one free from unlawful discrimination."
Hartsell v. Duplex Products, Inc., 123 F.3d 766, 773 (4th Cir.
1997).

     Plaintiff's allegations, which focus on her dislike of her
duties in the Contract Procurement position and personality

-18-

conflicts with her co-workers and supervisors in that position, do not rise to the level of a work environment that is severely or pervasively hostile on the basis of disability under the law. Plaintiff has not offered any direct evidence of discriminatory animus, such as demeaning or derogatory comments made to her in the Contract Procurement position regarding her disability. Plaintiff's indirect evidence consists solely of her own perceptions of unfairness and allegations of discriminatory intent.  Plaintiff's subjective beliefs, standing alone, are insufficient to withstand a well-supported motion for summary judgment.  Goldberg v. B. Green and Co., 836 F.2d 845, 848 (4th Cir. 1988).  For these reasons, Plaintiff's claim that her work environment was severely or pervasively hostile on the basis of her disability fails as a matter of law.

Due to her inability to adequately perform the essential functions of her Contract Procurement position, despite repeated counseling by her supervisors over many months, Plaintiff was not performing at a level that met her employers expectations.  She was not a "qualified individual with a disability" within the meaning of the Rehabilitation Act of 1973.  Thus, she cannot establish a prima facie case of disability discrimination. Further, even if she could establish a prima facie case, she cannot overcome Defendants' legitimate, non-discriminatory reasons for her dismissal.  Likewise, none of Plaintiff's other

-19-

allegations of disability discrimination, including her hostile work environment claim, rise to the level of an actionable claim under the Rehabilitation Act.

For these reasons, summary judgment should be GRANTED to the Defendants. An appropriate Order shall issue.

 

 

 

_____/s/_____
Claude M. Hilton
United States District Judge

Alexandria, Virginia
December 8 , 2009